```
UNITED STATES DISTRICT COURT            FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ANTHONY CARNELL,

                    Plaintiff,                    MEMORANDUM
                                                   AND ORDER
          -against-                               07-CV-1318 (JG)

MS. RAQUEL GARNER/WELCH SENIOR
PAROLE OFFICER OF QUEENS, MR.
MARTIN ARROYO AREA SUPERVISOR OF
QUEENS PAROLE, PAUL ANNETTS
SUPERINTENDENT DOWNSTATE
CORRECTIONAL FACILITY, DEBORAH
WOLFE, RECORD COORDINATOR OF
DOWNSTATE CORRECTIONAL FACILITY,

                    Defendants.
---------------------------------------------------------------x
A P P E A R A N C E S:

     ANTHONY CARNELL
          07-A-3077
          Fishkill Correctional Facility
          P.O. Box 1245
          Beacon, NY 12508
          Plaintiff, Pro Se

     ANDREW M. CUOMO
          Attorney General of the State of New York
          120 Broadway, 24th Floor
          New York, NY 10271
     By:  Donald Nowve
          Attorney for Defendants
```

JOHN GLEESON, United States District Judge:

Anthony Carnell brings this *pro se* action under 42 U.S.C. § 1983, seeking damages for confinement past his release date in violation of the Eighth Amendment. He has sued Senior Parole Officer Raquel Welch and Parole Area Seprvisor Martin Arroyo of the

Division of Parole, as well as two employees of the New York State Department of Correctional Services ("DOCS"), Paul W. Annetts, the superintendent of Downstate Correctional Facility, and Deborah Wolfe, former inmate records coordinator at Downstate. The defendants move to dismiss. For the reasons stated below, the motion is granted in part and denied in part.

BACKGROUND

Carnell, currently incarcerated in Fishkill Correctional Facility due to an unrelated crime, challenges the defendants' execution of his sentence for a September 1999 burglary conviction in New York Supreme Court, Kings County.

Carnell's sentence for this burglary charge was imposed on January 11, 2000. The minutes of the sentencing reflect the imposition of an indeterminate term of imprisonment of three and one-half to five years, but the sentence and commitment order issued that day reflects the imposition of a determinate term of three and one-half years. DOCS treated the determinate term as controlling. Although not reflected on the commitment order, under prevailing law at the time, a five-year term of post-release supervision was imposed by operation of law.[1]

Carnell was released to post-release supervision on January 31, 2002. On several occasions over the next three years, each time shortly after his release, Carnell violated post-release supervision and was re-incarcerated. The following description is taken in part from declarations submitted by the defendants. As the defendants have not moved for summary

---

[1] During the entire time at issue in this case -- from Carnell's January 11, 2000 sentencing to his April 6, 2006 release from DOCS -- New York courts ruled that N.Y. Penal Law § 70.45 imposed a period of post-release supervision automatically even if the sentencing court did not mention it. *E.g.*, *People v. Bloom*, 703 N.Y.S.2d 763, 763 (4th Dep't), *lv. denied*, 95 N.Y.2d 945 (2000). After the Second Circuit ruled this practice unconstitutional on June 9, 2006, *Earley v. Murray*, 451 F.3d 71, 75-76 (2d Cir. 2006), the New York Court of Appeals disavowed that practice, *Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358, 362 (2008); *People v. Sparber*, 10 N.Y.3d 457, 465 (2008).

2

judgment or provided the notice to Carnell which would allow me to convert the defendants' motion into one for summary judgment, I may not consider the contents of these documents.[2]

Accordingly, for the purposes of deciding this motion, I consider only the facts contained in public documents, as well as Carnell's claims and facts as to which there is no dispute. Although I do not consider the following allegations in deciding the motion, I provide this summary of DOCS's calculations merely by way of background. As relevant to this case, Carnell was declared delinquent on January 26, 2005 for reasons not apparent from the record. Accordingly, his post-release supervision time stopped running on that date, at which point he was determined to have two years, six months and 19 days of post-release supervision left to serve. On March 16, 2005, while still in that delinquent status, Carnell was arrested and incarcerated in the custody of the New York City Department of Corrections ("NYCDOC"). Carnell remained in the NYCDOC's custody until March 31, 2006.

During Carnell's custody, it is undisputed that several events occurred. He served three misdemeanor sentences for offenses committed both before and after his delinquency. Carnell also filed a state court collateral attack on his 2000 burglary conviction, which resulted in a resentencing for that conviction. At the resentencing on December 16, 2005, the Supreme Court, Queens County, imposed the same sentence with the exception that Carnell's five-year period of post-release supervision was reduced by two years and six months.

The defendants claim that as Carnell was previously deemed to have only two years, six months, and 19 days of post-release supervision left to serve, as of December 16, 2005,

---

[2] Some portions of the defendants' submissions include public records I may consider, but even to the extent DOCS's calculations of time constitute "public records," where there is dispute about them I cannot

he was determined to have only 19 days of post-release supervision left to serve. They further claim that, due to two errors in the computation of Carnell's sentence discovered during the course of this litigation, Carnell in fact had only 18 days of post-release supervision left to serve. The first error related to the calculation of Carnell's initial term of incarceration on his burglary conviction. At the time of his burglary arrest, he still had 63 days of outstanding post-release supervision to serve on a 1996 conviction; he had been delinquent up until his burglary arrest, and under New York law the first 63 days of his incarceration following his burglary arrest should have been credited not to Carnell's burglary sentence but to his previous 1996 sentence. Thus, according to DOCS, Carnell's release date should have been 63 days later than it actually was. Carnell does not dispute this claim.

However, the government claims that this error was almost exactly cancelled out by the second computation error DOCS describes. During his year of incarceration beginning in March of 2005, Carnell spent most of his time serving sentences for his three misdemeanor convictions. However, while DOCS had initially believed that Carnell spent 34 days incarcerated beyond the total terms of his misdemeanor convictions, review of the records in connection with this litigation revealed that he actually spent a total of 98 days incarcerated beyond the total terms of his misdemeanor convictions. Fifty of those days of extra incarceration were spent between the end of his first misdemeanor sentence and the commencement of his third misdemeanor sentence,[3] while 48 of those days of extra incarceration were spent after the end of his third misdemeanor sentence. Since the 98 days Carnell actually spent incarcerated

---

consider them. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that documents may not be considered in a motion to dismiss if there are genuine questions as to their authenticity or accuracy).

beyond the total of his misdemeanor terms is 64 days longer than the 34 days of extra incarceration he had previously been deemed to have suffered, Carnell's post-release supervision should have expired 64 days earlier. This 64-day error cancels out the 63-day error completely and means that Carnell was entitled to release one day sooner. Thus, on the defendants' calculation, after Carnell's resentencing he only had 18, not 19, days of post-release supervision to serve. In connection with the time Carnell still had left to serve on his misdemeanor sentences, after cancelling out the errors DOCS made, Carnell was entitled to be released on March 15, 2006. He was in fact released on April 6, 2006 from DOCS custody into NYCDOC custody, where he claims he spent four additional days prior to his ultimate release on April 10, 2006.

On March 15, 2006, the day the defendants argue Carnell should have been released from custody, he was still in the custody of NYCDOC. The state DOCS did not gain custody of Carnell until Friday, March 31, 2006. Although the defendants now claim there was no reason for Carnell to be in custody at that point, DOCS erroneously took Carnell's December 16, 2005 resentencing to be an entirely new sentence, and processed Carnell under a new department identification number, including subjecting him to the medical tests required for newly incarcerated inmates. It was only on April 6, 2006 that DOCS finally released Carnell. Carnell argues that DOCS released him to NYCDOC in order to serve what he claims were four more days of his six-month sentence for his third misdemeanor, and that therefore he should have received credit for part or all of the six-month period of NYCDOC incarceration from August 10, 2005 to February 10, 2006, which DOCS attributes to this six-month third

---

[3] The treatment of Carnell's *second* misdemeanor sentence, which was 30 days, is disputed, as

5

misdemeanor sentence. Pl.'s Mem. Opp. Mot. Dismiss ¶ 6. On this calculation, assuming that the defendants could be held accountable for the time Carnell spent in NYCDOC custody, Carnell would have been held in custody beyond the expiration of his sentence from March 15, 2006 to April 10, 2006, a period of 26 days.

However, Carnell has made an admission which undermines his claim. The defendants deemed Carnell to have spent 50 days of excess incarceration between the end of his first misdemeanor sentence (on June 20, 2005) and the commencement of his third misdemeanor sentence (which they deem to have occurred on August 10, 2005). Although Carnell's 30-day second misdemeanor sentence, which was imposed on September 15, 2005, ran consecutively to Carnell's third misdemeanor sentence, the defendants, in this litigation, did not seek to toll Carnell's period of post-release supervision for this 30-day sentence, as they believed that this sentence ran from September 15, 2005 to October 15, 2005 (during which time they also deemed Carnell to be serving his six-month third misdemeanor sentence). They thus effectively deemed the second sentence to run concurrently with the third sentence for the purpose of calculating when Carnell's period of post-release supervision expired, even though the two sentences were in fact imposed consecutively.

However, Carnell asserted at oral argument that his second misdemeanor sentence did not commence on September 15, 2005, but rather during the time he had previously been in custody after his first misdemeanor sentence. That is, on Carnell's own account, his second misdemeanor sentence was served from June 21, 2005 to July 21, 2005. This concession is consistent with the transcript of Carnell's second misdemeanor sentencing, where his attorney

discussed *infra*.

stated on the record prior to the court's acceptance of Carnell's guilty plea, and to no objection, that he had informed Carnell that Carnell would "get credit for the time he has been in jail," Sent'g Tr. 2, Sept. 15, 2005. If this second misdemeanor sentence ran from June 21, 2005 to July 21, 2005, then Carnell would not have spent 50 days in custody beyond the maximum terms of his sentences between June 20, 2005 and August 10, 2005, but only 20 days (between July 21, 2005 and August 10, 2005). Assuming that the defendants are accountable for time Carnell spent in the custody of NYCDOC, and that Carnell's six-month third misdemeanor sentence did not run concurrently with his period of post-release supervision, the 30-day term of Carnell's second misdemeanor sentence, if not run concurrently with his six-month third misdemeanor sentence, cancels out the 26-day period of excess incarceration Carnell claims.

On September 18, 2006, approximately five months after his release, Carnell committed an unrelated crime, for which he is now in custody.[4]

## DISCUSSION

A.  *The Legal Standard*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). Accordingly, I must accept the factual allegations in the

---

[4] The defendants' claim that Carnell committed a crime less than six months after his release might seem to be in some tension with Carnell's claim that he served a six-month sentence immediately upon his release from DOCS, but in the absence of a public record, the accuracy of which is not in dispute, verifying that the crime took place on September 18, 2006 and was not committed while incarcerated, I am compelled to take Carnell's claims at face value.

complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). However, I do not give effect to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). While generally "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "'fair notice of what the . . . claim is and the grounds on which it rests,'" *Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964), in at least some circumstances a plaintiff must plead specific facts in order to survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1964-65. The Second Circuit has interpreted this principle as a "flexible 'plausibility standard'" under which a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis omitted) (interpreting *Twombly*).

In deciding the defendants' motions, I may consider documents attached to the complaint as exhibits or documents upon whose terms the complaint relies, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002), as well as public records, *e.g.*, *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 218 (2d Cir. 2004); *see also Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that documents may not be considered if there are genuine questions as to their authenticity or accuracy).

B. *Carnell's Claims*

1. *Imposition of Sentence*

Carnell claims that DOCS erred in treating his sentence as a determinate sentence of three and one-half years (with a five-year term of post-release supervision added by operation of law) because the minutes of his sentencing reflect that he was sentenced to an indeterminate

term of three and one-half to five years.[5]  However, DOCS was bound by the terms of the commitment order it received from the court, not the minutes of the sentencing proceeding.  *See Murray v. Goord*, 1 N.Y.3d 29, 32 (2003) ("[P]rison officials are *conclusively bound* by the contents of commitment papers accompanying a prisoner." (internal quotations omitted)).

    2.    *Delayed Release and Erroneous Medical Examination*

        i.    *Personal Involvement*

The defendants claim that they were not personally involved in the calculation of Carnell's sentence, and that time calculations are performed by the DOCS Office of Sentencing Review ("OCR") and Office of Classification and Movement ("OCM").  DeSimone Decl., Apr. 28, 2008, ¶ 7.  However, the defendants have not moved for summary judgment or given the notice to Carnell which would be required to allow me to convert this motion into one for summary judgment.  As Carnell has alleged that the defendants were in a position to calculate his release date correctly but negligently or with deliberate indifference failed to do so, he has adequately pled personal involvement.

To the extent that the defendants intend to raise a defense of personal involvement on summary judgment, they should be advised that if I dismiss any claims against DOCS defendants for lack of personal involvement, I am likely to grant Carnell leave to amend his complaint to bring claims against those defendants personally involved in computing Carnell's sentence, and suggest that they identify such defendants and agree to substitute them instead of prolonging this litigation.

---

[5]     Indeterminate sentences are not permissible dispositions for Class C violent felonies committed,

ii.     *Failure to State an Eighth Amendment Claim*

The defendants argue that Carnell fails to state a claim that he was deprived of his Eighth Amendment rights, because they argue that the harm he complains of was *de minimis* as a matter of law. I agree as regards Carnell's delayed release, although not for the reasons the defendants give.

As an initial matter, the defendants are correct that Carnell's misdemeanor sentences ran consecutively to his term of post-release supervision. Carnell's argument that these sentences should have been deemed to run concurrently with the remainder of his post-release supervision (which would have advanced his release date to the day he completed his misdemeanor sentences) misapprehends the nature of post-release supervision.[6] The computation of the expiration of post-release supervision is governed by N.Y. Penal Law § 70.40(3)(c), and a court imposing a subsequent sentence has no power to affect this computation. *See* N.Y. Penal Law § 70.25(1) (granting a sentencing court the power to specify that a term of imprisonment runs either concurrently or consecutively with respect to "any undischarged *term of imprisonment* imposed at a previous time" (emphasis added)).[7] Under N.Y. Penal Law § 70.40(3)(c)(iii), Carnell was entitled to credit only for the time he spent in custody beyond the term of imprisonment imposed for his misdemeanor convictions. See § 70.40(3)(c) ("Any time spent by a person in custody from the time of delinquency to the time service of the sentence resumes shall be credited against the term or the maximum term of the interrupted sentence,

---

like Carnell's, after September 1, 1998 by first violent felony offenders. N.Y. Penal Law § 70.02.

[6]     This misapprehension is understandable, as the judge imposing Carnell's third misdemeanor sentence recommended that it run concurrent with Carnell's post-release supervision.

[7]     I note also that the courts imposing Carnell's first and second misdemeanor sentences did not purport to run them concurrently with his term of post-release supervision.

10

provided . . . (iii) that such custody arose from an arrest on another charge which culminated in a conviction, but in such case, if a sentence of imprisonment was imposed, the credit allowed shall be limited to the portion of time spent in custody that exceeds the period, term or maximum term of imprisonment imposed for such a conviction."). Therefore, Carnell is incorrect to the extent he argues that his sentences should have run concurrently with his term of post-release supervision.

The defendants claim they are not accountable for the time Carnell spent in NYCDOC custody. Though it is their position that there was no legal basis for NYCDOC to hold Carnell after March 15, 2005, the defendants argue that Carnell was entitled to be released not immediately upon his delivery to DOCS but on the next business day (Monday, April 3, 2006). They conclude that Carnell's actual release on April 6, 2006 was thus only three days after the date he was entitled to be released, and that a three-day delay is insufficient as a matter of law to implicate the Eighth Amendment.

While a delay in release of five days or less is insufficient to implicate the Eighth Amendment, *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993), Carnell has adequately alleged, given his *pro se* status, that the defendants were able to secure his release from NYCDOC. In his complaint, Carnell implies that the various named defendants were able to take ameliorative actions, and in his opposition papers, Carnell claims that the state DOCS is responsible for picking up inmates from NYCDOC custody, and that NYCDOC was holding Carnell past his release date due to a DOCS detainer. As he is proceeding *pro se* and I must construe his pleadings liberally, *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), I conclude that he plausibly alleges that the defendants had the ability to secure his release from

11

NYCDOC custody if they had calculated his release date correctly.[8] Thus, for the purposes of this motion, the defendants are accountable not merely for the time he spent in their custody but also the time he spent in NYCDOC's custody.[9] Thus, if the defendants' calculations were correct, Carnell would have been in custody for 26 days beyond the expiration of his post-release supervision. However, in light of a fundamental error in the defendants' calculation of time, as admitted at one point by Carnell, I need not decide whether erroneous 26-day detention would violate the Eighth Amendment, because Carnell was not in fact detained for 26 days after the expiration of his sentences.

As Carnell himself contended at oral argument, the second misdemeanor sentence did not commence on September 15, 2005, but instead during the time he remained in custody after the conclusion of his first misdemeanor sentence on June 20, 2005. While he later retracted his concession in a supplemental memorandum of law and argued that his second misdemeanor sentence began running at its imposition, not only did he initially concede this point, the minutes of his misdemeanor sentencing indicate that he would receive credit for the time he was in custody prior to his plea and the imposition of sentence, which strongly supports Carnell's concession.

Moreover, the defendants have provided no authority for the proposition that Carnell's second and third misdemeanor sentences, which as definite sentences imposed at

---

[8] As Carnell is proceeding *pro se*, I deem his complaint amended to include the theories set forth in his opposition papers. If I did not do so, I would grant Carnell leave to amend his complaint and set forth more clearly his theory of the case in any event -- I see no need to require this formality.

[9] This conclusion makes the questions whether the defendants were entitled to detain Carnell, with (as they claim) no legal basis, over the weekend, or whether a seven-day delay in release (from March 31, 2006 to April 6, 2006) would implicate the Eighth Amendment, *cf. Brims v. Burdi*, No. 03-CV-3159 (WHP), 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (finding six-day delay in release insufficient to violate the Eighth Amendment), inconsequential, and I decline to resolve them.

different times were consecutive with each other under state law, *see* N.Y. Penal Law § 70.15 (stating that misdemeanor sentences are definite sentences); *id.* § 70.25(1)(b) (stating that definite sentences imposed at different times are deemed to run consecutively unless otherwise stated), could be deemed essentially concurrent for the purpose of post-release supervision, and I have not found any. Indeed, § 70.40(3)(c)(iii) makes whether or not time in custody is credited to a post-release supervision term depend upon the amount by which the time in custody exceeds the authorized sentence, which seems to turn on whether or not the sentence runs consecutively. However, as I conclude that, as Carnell initially claimed, Carnell's second misdemeanor sentence had run completely prior to the commencement of his third misdemeanor sentence, I need not decide the question whether the defendants' construction of § 70.40(3)(c)(iii) is correct.

As the defendants therefore erroneously credited 30 days of custody to Carnell, the 26-day period of detention which resulted from the defendants' calculations is inaccurate. Indeed, based on Carnell's claims, it appears Carnell was released four days before his post-release supervision expired. Accordingly, Carnell has failed to state a claim that he was subject to cruel and unusual punishment through delayed release. The defendants' motion to dismiss is granted insofar as it addresses Carnell's claims based on his alleged delayed release.

Although the defendants do not address it in their motion to dismiss, Carnell also complains that the intake procedures to which he was subjected on his return to DOCS custody in March of 2006 constituted cruel and unusual punishment. The defendants have provided no authority or argument for the proposition -- which is not self-evident -- that deliberate indifference to a prisoner's medical privacy, causing unnecessary medical procedures to be performed, cannot constitute cruel and unusual punishment. *Cf. Lugenbeel v. Penn. Institutional*

*Health Servs.*, No. 95-CV-1167, 1996 WL 365818, at *2 (N.D.N.Y. June 24, 1996) ("Under § 1983, the standard for whether there has been an unconstitutional denial of medical care is whether there has been deliberate indifference to the prisoner's serious medical need, illness, injury, or right to privacy."). Given that Carnell plausibly alleges that at least one of the defendants was deliberately indifferent to problems in the calculation of his sentence, I do not find Carnell's claims based on the medical intake procedures, to which he was subject based on DOCS's admitted misclassification of his December 16, 2005 resentencing as a new conviction, amenable to resolution at this point. Accordingly, to the extent the defendants move to dismiss this portion of Carnell's claims (despite having failed to address it in their memorandum of law), the motion is denied.

## CONCLUSION

Accordingly, the defendants' motion to dismiss is granted in part in that Carnell's claims based on any delay in his release date are dismissed. The motion is denied in part, and Carnell's case will proceed on his claim that the intake medical procedures performed on him upon his return to DOCS custody violated his Eighth Amendment rights.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 31, 2008
      Brooklyn, New York